**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **NATHAN J. ROWAN,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION** |
| | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **UNITED ENROLLMENT SERVICES LLC,** a Florida company, and **ADROIT HEALTH GROUP LLC,** a Texas company, | |
| *Defendants.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Nathan J. Rowan ("Plaintiff" or "Rowan") brings this Class Action Complaint and Demand for Jury Trial against Defendant United Enrollment Services LLC, ("Defendant United Enrollment" or "United Enrollment") and Defendant Adroit Health Group LLC dba Strata Health Group, ("Defendant Adroit" or "Adroit") to stop the Defendants from violating the Telephone Consumer Protection Act and the Florida Telephone Solicitation Act by directing the making telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff Nathan J. Rowan is a resident of East Rochester, New York.

2.     Defendant United Enrollment Services LLC is a Florida limited liability company with its principal place of business in Boca Raton, Florida. Defendant United Enrollment conducts business throughout this District, Florida, and the U.S.

3.     Defendant Adroit Health Group LLC is a Texas limited liability company with its principal place of business in McKinney, Texas. Defendant Adroit conducts business throughout this District, Florida, and the U.S.

## JURISDICTION AND VENUE

4.     This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The Court has supplemental jurisdiction over the Florida Telephone Solicitation Act by ("FTSA") claims, as they arise out of the same telemarketing campaign as the TCPA claim.

5.     This Court has personal jurisdiction over the Defendants since the Defendants conduct business in this District and made or caused to be made telemarketing calls from this District.

6.     The venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made into this District.

## INTRODUCTION

7.     As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

2

8.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

9.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

10.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

11.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

12.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

13.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14.     According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in November 2021 alone, at a rate of 137.4 million calls per day. www.robocallindex.com (last visited December 30, 2021).

15.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

16.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

17.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

18.     Defendant Adroit is an insurance marketing agency.

19.     Defendant Adroit conducts business using the assumed name Strata Health Group.

20.     Defendant United Enrollment is an insurance marketing agency.

21.     Defendant Adroit directs the making of unsolicited calls to consumers including those who are registered on the DNC.

22.     Defendant Adroit hired Defendant United Enrollment as its agent to conduct widescale telemarketing campaign on its behalf and for its benefit.

23.     To generate leads for Defendant Adroit, in the first instance, Defendant United Enrollment places outbound calls, including text messages, to consumers including to those consumers who are listed on the National Do Not Call Registry without obtaining the prior consent from the consumers to call them.

24.     Defendant United Enrollment qualifies the leads and passes on the qualified leads of potential customers to Defendant Adroit, who then places further unsolicited calls, including

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

pre-recorded voice calls, without ever obtaining the consent from the consumers to call them, just like they called Plaintiff Rowan's cell phone.

25.     Multiple consumers have posted complaint regarding telemarketing calls they received from and/or on behalf of Defendant Adroit, similar to those received by Plaintiff Rowan, including complaints of receiving unsolicited telemarketing calls from 800-269-3563, the same phone number from which the Plaintiff was called:

03/18/2021

Misleading sales tactics; Difficult to cancel the policy; Company keeps texting me for payment AFTER I cancelled the fake policy When I bought the policy (on the phone), the salesman told me it was "health insurance". It is not. After a year of unsatisfactory performance, I tried several times to cancel the policy. I left several voicemail messages, but didn't get a call back from the company. Finally, I spoke to someone and told her that I wanted to cancel the policy. She asked why and I told her why. She said she'd cancel the policy, and that an account representative would be calling me. I told her that wasn't necessary. I never got a call, but the company took another monthly premium payment from my account. I called my bank and had them stop all further payments. I thought that was the only way I could end this policy (which I thought I'd already cancelled) and stop this company from taking my money each month. Since then, I've gotten REPEATED text messages telling me that my "health insurance" policy has lapsed, and that I need to send money to reinstate it. I've replied to some of the text messages, saying that I cancelled the policy, asking them to stop contacting me, asking them to stop calling the policy "health insurance" because it isn't that. But they still text me several times per week. In frustration, I've deleted most of the messages, but I've saved a few for proof. I can attach or forward them if necessary. I want this company to stop contacting me. I also want other consumers to know that this is NOT "health insurance". The fast-talking salesman, and the agents who keep texting me continue to call it health insurance, but if you look carefully at the "insurance card" they give you, the back of the card says it is not a health insurance policy. I want this company to stop misleading people.

**Desired Outcome**
I want this company to stop contacting me. I want other consumers to know that this is not "health insurance", despite what the salespeople tell you on the phone. I want this company to stop misleading consumers, and make it easier to cancel a policy if the customer is dissatisfied.

- 3

---

[3] https://www.bbb.org/us/tx/mckinney/profile/insurance-agency/strata-health-group-0875-90799591/complaints

03/27/2019

This is not a health insurance company is a marketing firm. Since 4/21/2019. I have flooded with calls and texts (over 100) and they wont stop. I have told them to remove me from their call list/website several times now and they wont remove my contact information. Every day I get more texts/calls and this is becoming harassment.

**Desired Outcome**
Remove me from robo call *********.

- 4

August 29, 2018
I got the "Ann" robocall for health insurance, made to my number on the national do not call list. I went through their enrollment process with a guy who gave his name as "Jonathan Fields", to try to figure out who called, and it led to A1 Health/Adroit Health Group, LLC, registered in TX, and FL.

The next day (August 30, 2018) they called me twice from 234-206-8892, 13 minutes apart, trying to get me to complete the verification email that they had sent me. The guy in the second call said his name was "Sean Duffy".

*Caller: A1 Health/Adroit Health Group, LLC*
*Call type: Telemarketer*

- 5



- 6

---

[4] https://www.bbb.org/us/tx/mckinney/profile/insurance-agency/strata-health-group-0875-90799591/complaints
[5] https://800notes.com/Phone.aspx/1-234-206-8892
[6] https://reverd.com/blog/1-800-269-3563



- [7]

26.     Multiple consumers have also posted complaint regarding telemarketing calls they received from Defendant United Enrollment, similar to those received by Plaintiff Rowan:



- [8]

- "I've just started getting these calls also, 3 times a day for the past month now I've got 5 of their numbers so I'm going to start spamming them with calls now" [9]

---

[7] https://callfilter.app/18002693563
[8] https://whocallsme.com/Phone-Number.aspx/8889973651/2
[9] https://scammer.info/t/robocalling-healthcare-scam-united-enrollment-services/6

**NeeP** 🛡                                                   2 ✏ **OCT '20**

On 6th Oct 2020 at 05:45 pm EST I received a robocall from spoofed callerID 775-848-4080
claiming it's enrollment season it seemed to be a screening avatar, handing me over to a live
agent, probably Filipino, asking me for my name. Then I got transferred over to the American
scammers.

They identified as **United Enrollment Services**
https://www.unitedenrollments.com/
Callback number: +1 561-257-0398 | agent name: Will
Carrier Name: LEVEL 3 COMMUNICATIONS, LLC

● They violated the TCPA and are not willing to pay me compensation / settle. Give them hell !   10

●  @NeeP #162833 I've just started getting these calls also, 3 times a day for the past month now I've
   got 5 of their numbers so I'm going to start spamming them with calls now   11

27.     For twenty-five years the FCC has explained that its "rules generally establish that
the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."
*In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion
and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

28.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation
or other entity that contracts out its telephone marketing "may be held vicariously liable under
federal common law principles of agency for violations of either section 227(b) or section 227(c)
that are committed by third-party telemarketers."[12]

29.     In that ruling, the FCC instructed that sellers such as Adroit may not avoid liability
by outsourcing telemarketing:

---

[10] https://scammer.info/t/robocalling-healthcare-scam-united-enrollment-services/64769
[11] *Id.*
[12] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the
TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

30.     In response to these calls, Plaintiff Rowan brings forward this case seeking injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act and the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF ROWAN'S ALLEGATIONS

31.     Plaintiff Rowan registered his cell phone number on the DNC on June 4, 2005.

32.     Plaintiff's cell phone number is not associated with a business and is used for personal use only.

33.     On November 30, 2021, at 1:58 PM, Defendant United Enrollment sent a text message to Plaintiff Rowan on his cell phone from the phone number 539-208-8589, to generate him as a lead for Defendant Adroit's health benefit plan and provided 855-751-2562 as the call back number:

+1 (539) 208-8589 >

Text Message
Today 1:58 PM

SBA endorsed Health Plans designed for small biz owners and self employed individuals. Open enrollment going on, Call 1-855-751-2562. stop=end Reply STOP to end

34.     This text message was sent using an automated dialing system, and it is programmed to respond to selected keywords like 'STOP'. It is not capable of receiving phone calls.

35.     On December 1, 2021, at 1:58 PM, Defendant United Enrollment sent another solicitation text message on Plaintiff Rowan's cell phone almost identical to the one above, this time using the phone number 878-227-7596, to sell Defendant Adroit's health plan to the Plaintiff. It was also sent using an automated dialing system and provided the same call back number, 855-751-2562, as the previous text message:

+1 (878) 227-7596 >

Text Message
Today 11:45 AM

SBA endorsed Health Plans designed for small business owners and self employed individuals. Open enrollment going now, Call 1-855-751-2562. stop=end reply stop to end

36.     Defendants willfully refrained from identifying themselves in both of these solicitation texts.

37.     To find out who was sending these solicitation text messages to his cell phone, Plaintiff Rowan called the phone number 1-855-751-2562 on December 3, 2021, at 11:39 AM. The call was answered by an agent who identified the company as Defendant United Enrollment.

38.     The agent asked several qualifying questions to the Plaintiff and offered him a health plan from Defendant Adroit and its subsidiary companies. While Plaintiff was speaking with Defendant United Enrollment's agent, the agent sent a text message to the Plaintiff's cell phone, using the phone number 949-288-2906, with a hyperlink to Defendant Adroit's webpage:



39.     Plaintiff clicked on this link and discovered that the health plan offered to him was Defendant Adroit's and of its subsidiary companies. Plaintiff did not provide his e-signature and hence never provided his consent to accept the terms of the plan offered or to receiving any telephonic solicitation from or on behalf of the Defendants.

40.     On December 6, 2021, at 4:04 PM, Plaintiff received an e-mail from Defendant Adroit with a hyperlink to the same policy as was offered to him before seeking his signature. The email also provided a call back number, 800-269-3563.

41.     Plaintiff Rowan had not provided his consent to Defendant United Enrollment, or to Defendant Adroit to receive any solicitation calls or text messages from them, and he did not provide his e-signatures on the policy offered to him by the Defendants.

42.     On December 8, 2021, at 1:08 PM, Plaintiff Rowan sent "Stop" to the phone number 949-288-2906, from which Defendant United Enrollment's agent sent the confirmation hyperlink to the Plaintiff's cell phone. He instantly received a confirmation message confirming that the Plaintiff was unsubscribed.



43.     On December 8, 2021, at 1:45 PM, despite having made a stop request, and without ever providing his consent to receive any telemarketing calls from the Defendants, Plaintiff Rowan received a call to his cell phone from the phone number 800-269-3563, which was mentioned in the email sent to him by Defendant Adroit on December 6, 2021. Plaintiff did not answer the call and received a pre-recorded voicemail, which said:

> "Hello, this reminder is from Adroit Health Group customer service and contains important information about your plan benefits. In our routine review of new or changed accounts, we have found that a valid confirmation of enrollment document is not in place. We have sent a secure email with the needed document to the email address used in your plan application. Please access and complete the e-signature process within 72 hours to assure continuation of health benefits. If you have questions about this message or the e-signature document, please contact AHG customer service, Monday through Friday, 7 AM to 6 PM central time, at 800-269-3563. Thank you for being a valued member and please let us know if we can help you in anyway."

44.     On December 29, 2021, at 12:25 PM, Plaintiff Rowan received another call to his cell phone again from the same phone number 800-269-3563. Plaintiff did not answer this call and he received the same pre-recorded voicemail as the last time, which said:

> "Hello, this reminder is from Adroit Health Group customer service and contains important information about your plan benefits. In our routine review of new or changed accounts, we have found that a valid confirmation of enrollment document is not in place. We have sent a secure email with the needed document to the email address used in your plan application. Please access and complete the e-signature process within 72 hours to assure continuation of health benefits. If you have questions about this message or the e-signature document, please contact AHG customer service, Monday through Friday, 7 AM to 6 PM central time, at 800-269-3563. Thank you for being a valued member and please let us know if we can help you in anyway."

45.     On January 19, 2022, at 1:25 PM, Plaintiff Rowan received another call to his cell phone from Defendant Adroit using the phone number 800-269-3563. Plaintiff did not answer this call and received the same pre-recorded voicemail as the ones he received before:



13

46.     On February 2, 2022, at 1:15 PM, Plaintiff Rowan received another call to his cell phone from Defendant Adroit using the phone number 800-269-3563. Plaintiff did not answer this call and received the same pre-recorded voicemail as the ones he received before:



47.     On February 9, 2022, at 12:58 PM, Plaintiff Rowan received another call to his cell phone from Defendant Adroit using the phone number 800-269-3563. Plaintiff did not answer this call and received the same pre-recorded voicemail as the ones he received before:



48.     The unauthorized solicitation telephone calls and text messages that Plaintiff received from and/or on behalf of the Defendants have harmed Plaintiff Rowan in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

49.     Seeking redress for these injuries, Plaintiff Rowan, on behalf of himself and Classes of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

50.     Plaintiff Rowan brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) either of the Defendants (or an agent on Defendants' behalf) called on their telephone number more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on

the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendants called Plaintiff.

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) either of the Defendants (or an agent on Defendant's behalf) called on their cellular telephone number (2) using the same or a similar pre-recorded voice message as was used to call the Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) either of the Defendants or their agent called more than once (2) within any 12-month period (3) for substantially the same reason Defendants or their agent called the Plaintiff, (4) including at least one call after the person requested that Defendants or their agent to stop calling.

**Autodial Class:** All persons in the United States, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendants' goods and/or services, (2) from Florida, (3) using the same equipment or type of equipment utilized to call the Plaintiff.

**Unidentified Sales Call Class:** All persons in the United States, who, on or after July 1, 2021, (1) received an unsolicited telephonic sales call from either of the Defendants, (2) from Florida, (3) in which the caller failed to identify the name of the business on whose behalf the solicitation call was placed.

51.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants has been fully and finally adjudicated and/or released. Plaintiff Rowan anticipates the need to amend the Class definition following appropriate discovery.

52.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

53.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA and the FTSA; and

(b)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

54.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to the Plaintiff. The Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

55.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Rowan. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rowan and the Do Not Call Registry Class)**

56.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

57.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

59.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Rowan and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

60.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Rowan and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

61.     As a result of Defendants' conduct as alleged herein, Plaintiff Rowan and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are

18

entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

62.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Rowan and the Pre-recorded No Consent Class)

63.     Plaintiff repeats and realleges paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

64.     Defendants transmitted unwanted solicitation telephone calls to Plaintiff Rowan and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

65.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Rowan and the other members of the Pre-recorded No Consent Class.

66.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff Rowan and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

## THIRD CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Rowan and the Internal Do Not Call Class)

67.     Plaintiff repeats and realleges paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

68.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made) and will not apply to affiliated entities unless the consumer

reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

69.     Defendants, or an agent calling on behalf of Defendants called the Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendants or their agent to initiate telemarketing calls or text messages.

70.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

71.     The Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff, and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## FOURTH CLAIM FOR RELIEF
### Violation of the Florida Telephone Solicitation Act,
### (Fla. Stat. § 501.059)
### (On Behalf of Plaintiff Rowan and the Autodial Class)

72.     Plaintiff repeats and realleges paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

73.     Plaintiff brings this claim individually and on behalf of the Autodial Class Members against the Defendants.

74.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

75.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

76.     Defendants failed to secure prior express written consent from Plaintiff and members of the Autodial Class.

77.     In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

78.     Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

79.     As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

<u>**FIFTH CLAIM FOR RELIEF**</u>
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Rowan and the Unidentified Sales Call Class)**

80.     Plaintiff repeats and realleges paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

81.     Plaintiff brings this claim individually and on behalf of the Unidentified Sales Call Class Members against the Defendants.

82.     The FTSA requires "any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number" to mandatorily "identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. § 501.059(2)

83.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

84.     In violation of the FTSA, Defendants failed to identify the name of the telephone solicitor or the business on whose behalf those unsolicited telephonic sales calls were made and/or caused to be made to the Plaintiff, and other members of the Florida Unidentified Sales Calls Class.

85.     As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b)   An award of damages and costs;

c)   An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

d)   An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)   Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Duverger requests a jury trial.

**NATHAN J. ROWAN**, individually and on behalf of all others similarly situated,

DATED this 14th day of February, 2022.

By: /s/ Stefan Coleman
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
COLEMAN PLLC
66 West Flagler Street Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar No. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.

237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*